UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GEORGE L., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 25-188-PAS |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of the Social Security | : | |
| Administration, | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On February 26, 2020, Plaintiff George L., a "younger" individual, filed his third set[1] of applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act.  Plaintiff alleges disability beginning on January 15, 2020, based on neuropathy, diabetes, knee pain and drop foot.  Tr. 91.  Plaintiff's date-last-insured is March 31, 2026.

An administrative law judge ("ALJ") reopened Plaintiff's second set of applications and, in addition to the impairments alleged by Plaintiff, recognized borderline intellectual functioning and depressive/anxiety disorders as severe.  Tr. 21.  Weighing the evidence of record, including administrative findings of six non-examining expert physicians/psychologists, the reports of three consulting examiners (two psychologists and an advanced practice registered nurse) and an RFC[2] opinion from the treating physician assistant, P.A. Rachael Maina, the ALJ found that

---

[1] Plaintiff's first application (SSI only) was denied at the initial phase in October 2018.  His second set of applications (SSI and DIB) was denied at the initial phase in May 2022.  Tr. 18.  The second set was reopened by the ALJ.  Id.

[2] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. §§ 404.1545(a)(1), 416.945.

Plaintiff retained the physical RFC to perform light work reduced to four stand/walk hours with postural limits, as well as the mental RFC to do simple work ("simple tasks and instructions"), with occasional social interaction, simple changes in a routine work setting and a low stimulus environment working primarily with objects.  Tr. 23-28.  Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff can perform three exemplar jobs.  Tr. 29-30.  Although the ALJ did not find Plaintiff limited to jobs that afford a sit/stand option, the decision notes that all three exemplar jobs permit the work to be performed sitting or standing at will.  Tr. 30 & n.1.

Plaintiff challenges the ALJ's decision for four reasons.  First, Plaintiff argues that the ALJ erred in how he weighed the mental health opinions and prior administrative findings, as well as the treating source opinion of P.A. Maina.  Second, Plaintiff challenges the ALJ's Step Five determinations.  Third, Plaintiff contends that the ALJ did not mention his subjective testimony about the side effects of medications.  Fourth, Plaintiff argues that the ALJ erred in his approach to the claim of excessive absence/off-task time.  Plaintiff has moved to reverse the decision of the Commissioner and to remand the case for further proceedings.  ECF No. 11.  Defendant has filed a counter motion for an order affirming the Commissioner's decision.  ECF No. 12.  Both motions are before me on consent pursuant to 28 U.S.C. § 636(c).

I.    **Background**

Plaintiff received special education, has dyslexia, did not complete high school, did not earn a GED, lives with family members or his girl friend and has been homeless in the past.  Tr. 54, 57, 363, 366, 534.  For several years during his twenties, he was married; he has three children.  Tr. 364, 534.  For many years, until 2020 or early 2021, he had fairly consistent employment principally as an automobile detailer, which he learned to do on the job, task-by-

task, with each task taking one and a half to two weeks to learn. Tr. 45-46, 256-57, 534. This job required bending/stooping, squatting and kneeling; it is undisputed that his RFC precludes him from doing this past work. Tr. 28, 47. During the ALJ hearing, Plaintiff claimed that he cannot work because of difficulty with his legs, which cramp, sting and give out, and with sitting for a long time without moving around. Tr. 47-48. He also mentioned that prescribed medication has "some" impact on memory and causes stomach issues if he does not eat after he takes it and sometimes even if he does. Tr. 49.

Medically, Plaintiff has long been diagnosed with type 2 diabetes. Tr. 394. He began treatment for diabetes and related neuropathy at Ocean State Health in February 2021. Id. During the first appointment at Ocean State, Plaintiff reported an injury on the job that caused back and leg pain. Id. Providers prescribed medication for diabetes, radiculopathy and muscle spasm and referred Plaintiff to physical therapy. E.g., Tr. 410. By May 13, 2021, the physical therapist's notes reflect that Plaintiff was discharged based on "significant improvement," with minimal knee pain, no hip/back pain and no limits on bending or the ability to stand/walk up to one hour, with mild discomfort after thirty minutes. Tr. 460-63. This provider noted Plaintiff's statement that he was "[h]oping to return to work following next MD appointment." Tr. 460. The Ocean State treating notes include observations of clear speech and logical goal directed thoughts. E.g., Tr. 398. They do not reference any observation of mental or cognitive impairment. The Ocean State records end in July 2021. Tr. 373-459.

At three appointments in January, February and May 2022, Plaintiff was examined by a neurologist, Dr. Keith Brecher, as well as by Dr. Gary L'Europa who performed nerve conduction studies. Tr. 523-26, 531-33, 598. Plaintiff was found to have weakness in one leg muscle and was diagnosed with generalized symmetrical neuropathy caused by diabetes. Tr.

3

524, 531.  While Plaintiff's gait was unremarkable, Dr. Brecher's notes reflect concern about the atypicality of Plaintiff's complaints; this caused Dr. Brecher to send Plaintiff for testing for multiple sclerosis ("MS") and to suggest that Plaintiff use an ankle brace as treatment for possible MS.  Tr. 598.  P.A. Maina noted in July 2022 that Plaintiff was told he did not have MS.  Tr. 602.

On March 9, 2022, Plaintiff began treatment at Village Medical with P.A. Maina.  Tr. 608, 720.  Plaintiff told her that his legs "will give out" and asked for an out-of-work letter.[3]  Tr. 608, 610.  On examination, P.A. Maina observed that Plaintiff "ambulat[ed] normally" and continued medications for diabetes/neuropathy.  Id.  Her mental health observations are all normal, nor do her notes contain any observation of cognitive impairment.  Id.  On June 27, 2022, P.A. Maina noted Plaintiff's report that he had been wearing the brace, which had been helpful, observed that Plaintiff was ambulating normally and recommended exercise.  Tr. 604, 606.  At appointments in July and December 2022 and March and May 2023,[4] she continued to prescribe medication for diabetes and neuropathy and to observe normal ambulation and no mental health concerns.  Tr. 600-03, 643, 648-51, 678, 742-53.  In August 2023, Plaintiff complained of a spasm in his leg, and asked for a "letter for [an] update to [the] court."  Tr. 736, 739.  The last encounter of record with P.A. Maina is on December 7, 2023, when she again noted that he was wearing the brace, but had normal gait, normal muscle strength and tone, normal movement in all extremities with unremarkable bloodwork and no mental health concerns.  Tr. 727, 730-31.

---

[3] In July 2022, she signed a letter opining that he cannot return to his previous job "due to neuropathy."  Tr. 685.

[4] In July 2022, P.A. Maina noted Plaintiff's symptoms following a hospitalization for encephalitis.  This serious but passing infectious disease is not in issue in connection with Plaintiff's disability applications.

At the December 2023 encounter, Plaintiff told P.A. Maina that he had an appointment in connection with his Social Security applications. Tr. 731. He asked her for another letter stating that he cannot work at his previous occupation due to neuropathy. Id. P.A. Maina noted her concern that Plaintiff had not tried to look for work recently and had not applied for jobs outside of his previous career field. Id. In response to his request for a letter, she explained her opinion:

> I will write letter one last time for the next 3 months but he needs to look for work as I believe can find something that is not labor intensive or requiring extra education to do.

Id. Eleven days later, P.A. Maina signed the RFC opinion described below.

## II.    Standard of Review

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g), 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). It is more than a scintilla and must do more than merely create a suspicion of the existence of a fact. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam). Further, while "more than a scintilla of evidence is required to meet the benchmark, a preponderance of evidence is not." Clark v. Kijakazi, 673 F. Supp. 3d 119, 122 (D.N.H. 2023) (cleaned up). The determination of substantiality is based on an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347

(1st Cir. 2000) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).  If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g).  Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015).

## III.    Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505.[5]  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-06, 1509-11.

---

[5] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI.  See McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).  For simplicity, I cite only to one set.

### A.   The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §

404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not

disabled.  Second, if a claimant does not have any impairment or combination of impairments

that significantly limit physical or mental ability to do basic work activities, then the claimant

does not have a severe impairment and is not disabled.  Third, if a claimant's impairments meet

or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.

Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not

disabled.  Fifth, if a claimant's impairments (considering RFC, age, education and past work)

prevent doing other work that exists in the local or national economy, a finding of disabled is

warranted.  The claimant bears the burden of proof at Steps One through Four, but the

Commissioner bears the burden at Step Five.  Sacilowski v. Saul, 959 F.3d 431, 433, 440-41 (1st

Cir. 2020); see Ulitsch v. U.S. Soc. Sec. Admin., Case No. 24-cv-00074-PB, 2025 WL 691054,

at *4 (D.N.H. Mar. 4, 2025) ("claimant bears the burden at the first four steps to prove by a

preponderance of the evidence that they are disabled").

### B.   Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case

record.  See 20 C.F.R. § 404.1520c.  The most important factors to be considered when the

Commissioner evaluates the persuasiveness of a medical opinion are supportability and

consistency; these are usually the only factors the ALJ is required to articulate.  20 C.F.R. §

404.1520c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3

(D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024).  Supportability refers to the

quantum of relevant objective medical evidence and supporting explanations presented by a

medical source to support the medical opinion or prior administrative medical findings; consistency refers to the degree to which a medical opinion or prior administrative medical finding is consistent with the evidence from other medical sources and nonmedical sources in the claim.  20 C.F.R. § 404.1520c(c)(1)-(2).  A medical opinion lacking adequate supporting evidence, or one that is inconsistent with evidence from other sources, is not persuasive regardless of who made the medical opinion.  See Amanda B. v. Kijakazi, C.A. No. 21-308MSM, 2022 WL 3025752, at *2 (D.R.I. Aug. 1, 2022), adopted, 2022 WL 18910865 (D.R.I. Nov. 7, 2022).

In considering whether, and to what extent, to rely on medical/expert opinions, the ALJ may pick and choose among portions of them, finding parts persuasive and other parts less so. Samantha B. v. Bisignano, C.A. No. 25-00004MSM, 2025 WL 2992378, at *6 (D.R.I. Oct. 24, 2025).  If an ALJ weighs differing medical opinions and favors aspects of some over others, there is no error as long as the reasons for these conclusions are adequately supported by the record.  Edwin L. v. Kijakazi, No. 21-00359-MSM, 2022 WL 2229509, at *6 (D.R.I. Apr. 25, 2022), adopted, 2022 WL 2212690 (D.R.I. June 21, 2022) (court cannot second-guess ALJ's exercise of discretion to make conclusions about which medical opinions to rely on as long as conclusions are supported by substantial evidence).

IV.    **Analysis**

A.    **ALJ's Approach to Opinions and Findings of Experts and Treating Providers**

Plaintiff has challenged the ALJ's weighing of the opinions/findings of the mental health experts and P.A. Maina.  These opinions/findings, including their similarities and inconsistencies, which the ALJ resolved, may be briefly summarized.

From the prior reopened application, consulting psychologist Dr. Alex Turchetta noted Plaintiff's report of prior diagnoses of depression/anxiety and panic disorder and found "severe emotional distress" impacting his ability to relate to others and to respond to work pressures, but also found Plaintiff capable of understanding and following directions and instructions with "cognitive skills . . . in the low average range." Tr. 534-36. Also from the prior reopened application, based on a file review, the non-examining expert psychologist Dr. Jeffrey Hughes found no significant limits in the abilities to remember and understand short and simple instructions and sustain an ordinary work routine without special supervision, but the inability to perform tasks that involve frequent interaction with customers or coworkers, as well as that, despite moderately limited ability to maintain attendance and be punctual, Plaintiff retains the ability to perform simple tasks "over the course of a normal 8/5/40 work routine." Tr. 77-78, 87-88.

For the current application, a consulting examiner, psychologist Dr. John Parsons, observed appropriate attention/concentration, normal recall, intelligible speech with a cooperative though defensive rapport. Tr. 361-62. Although he noted moderate depression/anxiety, Dr. Parsons did not adopt Dr. Turchetta's diagnoses of depression and anxiety. Tr. 366, 370. Instead, based on testing, he diagnosed borderline intellectual functioning, with mild-to-moderate limits in the ability to understand, remember and follow instructions, moderate concentration and social limits, but moderate-to-marked limits in the ability to adapt. Tr. 368. Also for the current application, based on Plaintiff's IQ scores in the low average/borderline range, his ability to sustain work in the past, his pain, low energy and social avoidance, the two non-examining psychiatric experts (psychiatrist Dr. Susan Killenberg and psychologist Dr. Marsha Hahn) found that Plaintiff can perform work that requires

9

understanding and remembering simple tasks involving 1-3 step instructions for two hour periods over an eight hour day/forty hour week at a standard work pace in a low stimulus setting and limited social interaction, with the ability to respond appropriately to supervision. Tr. 110-11, 124-26. Unlike Dr. Parsons (whose report these experts reviewed), they found moderate (not marked) adaptation limits. Tr. 95, 121. Unlike Dr. Turchetta, Dr. Hughes and Dr. Parsons, both noted that Plaintiff "may" require supervision while learning a task but can progress to performing simple tasks without special supervision. Tr. 111, 125.

The final opinion in issue is that of P.A. Maina, signed eleven days after she advised Plaintiff of her treating opinion that he can work at jobs less arduous than his previous occupation. Tr. 720-23. Based on diabetes and neuropathy causing lower extremity burning and tingling and the limp with walking, she opined that he can occasionally lift up to twenty pounds, can stand/walk for no more than a total of two hours, can sit for up to six hours and needs a sit/stand option.[6] Tr. 721-22. With respect to the stand/walk limit, P.A. Maina's opinion clashes with the unchallenged RFC opinions of the non-examining physician experts (which the ALJ found to be persuasive) that Plaintiff can stand/walk for up to four hours. P.A. Maina also opined that Plaintiff can handle the stress of normal work and did not check off any of the boxes to indicate that he would be off-task or absent from work. Tr. 723. Nevertheless, due to pain, she opined that Plaintiff would need "1-2" unscheduled breaks of fifteen to thirty minutes each. Tr. 721. This aspect of P.A. Maina's opinion – unscheduled breaks – clashes with the non-examining psychiatrist/psychologists; all three opined that, despite pain and related symptoms,

---

[6] As to the sit/stand option, while the ALJ rejected this as an RFC limitation in reliance on the non-examining physician experts, he relied only on jobs that would permit such an option. Thus, if the rejection of this limit were based on error (which I do not find), it would not be material to the outcome of the claim.

Plaintiff can sustain a normal work schedule.  P.A. Maina opined that emotional problems do not contribute to the severity of Plaintiff's limitations.  Tr. 720.

The ALJ appropriately weighed all of these opinions.  He found all three non-examining mental health opinions persuasive, except for his rejection of the finding by two of them that Plaintiff "may" require supervision (which these experts opined he can accept) while learning new tasks although he can progress to simple tasks without special supervision.[7]  The ALJ based this conclusion on Dr. Parsons' findings, including the lack of indication of the need for additional supervision to learn tasks and the observation that Plaintiff has only mild-to-moderate limits in the ability to understand, remember and follow instructions.  Tr. 27.  The ALJ found unpersuasive P.A. Maina's opinion to the extent that she opined that Plaintiff would need one to two unscheduled breaks, can stand/walk only for a total of two hours and needs to sit/stand at will.  Tr. 27.  As reasons, the ALJ relied on the inconsistency between these findings and the balance of the evidence, including Plaintiff's modest findings on examination and the lack of any record evidence to support the need for unscheduled breaks and a sit/stand option; the ALJ focused particularly on P.A. Maina's own observations of normal muscle strength/tone, normal movement of joints, and normal gait at the encounter immediately prior to the date on her RFC opinion.  Tr. 27.  As to the consulting examination results, the ALJ found the Parsons report persuasive except that he rejected the finding that adaptive limits may be marked (rather than just moderate) based on Plaintiff's consistently cooperative behavior with providers, his lack of the need for emergency or psychiatric admissions and his lack of current psychiatric treatment.  Tr. 28.  The ALJ found the Turchetta report not persuasive based on its inconsistency with the many

---

[7] The ALJ also found unpersuasive the prior application mental health expert's opinion of only mild adaptive limitations.  The ALJ found Plaintiff to be more limited in that he found moderate adaptive limits in reliance on the mental health experts for the current application.

positive findings on examination and lack of ongoing mental health treatment and of any treating source documentation of signs or findings consistent with it.  Id.

Plaintiff's challenge to the ALJ's approach to this opinion evidence is focused on four allegations of error: first, Plaintiff asks the Court to find error in the ALJ's rejection of the current phase psychiatric non-examining experts finding that Plaintiff "may" need supervision while learning new skills; second, Plaintiff asks the Court to find error in the ALJ's rejection of the finding of Dr. Parsons (the consulting examiner) of moderate-to-marked limits in the ability to adapt (only to the extent that this finding tips to marked); third, Plaintiff asks the Court to find error in the ALJ's rejection of the Turchetta finding of "severely impacted" social capacity and ability to sustain work pressure; and four, Plaintiff asks the Court to find error in the ALJ's rejection of P.A. Maina's opinions that Plaintiff's pain would result in the need for unscheduled breaks, a two-hour limit on stand/walk and the need to sit/stand at will.

The problem with all of these arguments is that, as to each, as noted above, each of the ALJ's conclusions is supported by substantial evidence that he marshaled to make each challenged finding.  By way of just two examples, the ALJ's rejection of the non-examining finding of two mental health experts that Plaintiff "may" need supervision while learning new tasks is contradicted by the observation of Dr. Parsons on examination that Plaintiff was able to understand and follow instructions, while the ALJ appropriately based the rejection of the more extreme findings in the Maina opinion on her own examination findings over the extended course of treatment-based appointments.  Notably, in contrast to her opinion, which purports to be based on the observation of "limping," P.A. Maina's examination results consistently include the observation of normal ambulation and/or normal gait, with the occasional notation that Plaintiff was using the ankle brace.  Further, P.A. Maina's opinion about unscheduled breaks is

12

contradicted by the findings (which the ALJ found to be persuasive) of the non-examining experts that Plaintiff can sustain a normal work routine despite pain, low energy and sleep issues, among other symptoms. Nor did the ALJ err by ignoring Plaintiff's pain – indeed, the persuasive findings of the non-examining experts on which he relied expressly took Plaintiff's subjective pain into consideration.

Having reviewed the entirety of this record, the Court finds that a reasonable mind could accept it as adequate to support the ALJ's conclusions. Nor does the Court find that the ALJ's conclusions are tainted by cherry-picking, by an improper untutored lay assessment of complex medical findings or by the failure to marshal substantial evidence to support each one. Based on the foregoing, the Court finds no error in the ALJ's weighing of the opinion evidence.

## B.    ALJ's Step-Five Determinations

Plaintiff challenges the ALJ's Step Five determinations for three reasons.

First, Plaintiff contends that the ALJ erred in relying on the VE's testimony that Plaintiff's RFC permits him to perform three exemplar jobs. With no explanation for his failure to raise the issue during the hearing while the VE was testifying, Plaintiff argues that these three jobs are classified as GED reasoning level 2 and 3, which Plaintiff contends is *per se* inconsistent with the inability to do more than simple work; to support this *per se* argument, Plaintiff relies on now-rejected cases from the District of Maine and ignores this Court repeated rejection of the precise same argument.

There are many flaws, each fatal, with this argument. First, Plaintiff's brief appears to be a cut-and-paste from another case in that it refers to exemplar jobs from some other case – <u>not to those regarding which the VE in this case testified and on which the ALJ in this case relied</u>. Further, the Court's review of the Dictionary of Occupational Titles reveals that none of the jobs

13

the ALJ actually relied on are GED reasoning level 3 and one of them is GED reasoning level 1.

See U.S. Dep't of Labor, Dictionary of Occupational Titles, App. C (4th ed. 1991).  Accordingly,

the factual premise of the GED argument is simply wrong.  Second, Plaintiff has waived this

argument by failing to question the VE at the hearing.[8]  See, e.g., Joseph D. v. Bisignano, C.A.

No. 25-00127-AEM, 2025 WL 3470305, at *7 (D.R.I. Dec. 3, 2025); Gianna S. v. Bisignano,

C.A. No. 25-100-PAS, 2025 WL 3443475, at *4 & n.8 (D.R.I. Dec. 1, 2025) (citing cases).

Third, this Court has repeatedly rejected the *per se* rule on which Plaintiff relies.  See, e.g.,

Joseph D., 2025 WL 3470305, at *7 ("Court has repeatedly held that a claimant like Joseph who

is limited to simple, repetitive tasks may perform jobs requiring GED reasoning levels of two or

three"); Gianna S., 2025 WL 3443475, at *4 ("case law is clear (both in this District and

elsewhere) that jobs with a GED reasoning level of 2 or 3 are consistent with an RFC limitation

to simple and unskilled tasks"); Christine L. v. Colvin, C.A. No. 24-00145-LDA, 2024 WL

5118440, at *7 (D.R.I. Dec. 16, 2024) (same); Steven A. v. O'Malley, C.A. No. 23-544-WES,

2024 WL 4344865, at *7-8 (D.R.I. Sept. 30, 2024) (same), adopted by text order (D.R.I. Oct. 18,

2024); William S. v. O'Malley, C.A. No. 24-00143-LDA, 2024 WL 4123488, at *7 (D.R.I. Sept.

9, 2024) (same); Su Y. v. O'Malley, C.A. No. 23-CV-541-JJM-PAS, 2024 WL 3385200, at *3

(July 11, 2024) (same); Ryan Y. v. O'Malley, C.A. No. 23-540-PAS, 2024 WL 3329755, at *8

(D.R.I. July 8, 2024) (same).  Plaintiff has also ignored a strongly worded and repeated caution

that a repeat of this argument without citation to the growing body of adverse authority could be

---

[8] Unlike some of the other cases in which Plaintiff's counsel's GED argument has been rejected, e.g., Gianna S., 2025 WL 3443475, at *3 (claimant is high school graduate with no diagnosed cognitive impairments), Plaintiff here did not graduate from high school and has low average to borderline intellectual functioning.  Thus, one might speculate that questioning the VE about the exemplar jobs could have exposed an inconsistency between the job requirements and Plaintiff's intellectual capacity, although that seems unlikely in light of the low GED requirements of the jobs on which the ALJ actually relied.  What matters, however, is that Plaintiff did not take the opportunity that he was afforded to do this during the hearing.  Tr. 69.  Therefore, the argument is forfeited.

sanctionable. Emily C. v. Dudek, C.A. No. 24-00324-LDA, 2025 WL 1263715, at *6 & n.1 (D.R.I. May 1, 2025); see Gianna S., 2025 WL 3443475, at *4 n.8. The Court reiterates that caution here.

Plaintiff's other two Step-Five challenges – to the source of the job numbers ("US Bureau of Labor Statistics and SkillTRAN Job Browser," Tr. 69) and to the number (19,000) of jobs as *per se* insufficient to support the ALJ's finding of a significant number of available jobs – are equally unavailing.

As to the former argument, the Commissioner correctly relies on Plaintiff's forfeiture of the argument by his failure to raise the issue by questioning the VE during the ALJ hearing. Jose M. v. O'Malley, C.A. No. 23-319MSM, 2024 WL 3886749, at *5 (D.R.I. Aug. 20, 2024), adopted, 2024 WL 4063770 (D.R.I. Sept. 5, 2024). That is, unless inconsistency is exposed by questions posed to the VE, there is no *per se* error in reliance on Bureau of Labor statistics and SkillTran for the number of available jobs. See Purdy, 887 F.3d at 17 (affirming ALJ's reliance on number of jobs that VE derived from his expertise using Bureau of Labor statistics and SkillTran).

As to the latter argument, the Commissioner cites to cases holding that the ALJ's common sense, Cabreja v. Astrue, C.A. No. 11-130-ML, 2012 WL 272746, at *5 (D.R.I. Jan. 27, 2012), permits the available work finding to be based on as few as 10,000 jobs. See, e.g., Deannie B. v. Kijakazi, No. 1:22-cv-00067-JAW, 2023 WL 839828, at *2 (D. Me. Jan. 27, 2023) ("11,752 positions available in the national economy . . . is sufficient to meet the Commissioner's Step 5 burden"), adopted, 2023 WL 2019089 (D. Me. Feb. 15, 2023); Brownell v. Berryhill, Civil Action No. 17-11462-FDS, 2018 WL 3150222, at *14 (D. Mass. June 27, 2018) (12,000 national jobs sufficient); Vining v. Astrue, 720 F. Supp. 2d 126, 137 (D. Me.

15

2010) (collecting cases, finding numbers "in the ballpark of 10,000 to 11,000 nationwide" sufficient). The Court finds these cases to be persuasive and adopts their reasoning to reject Plaintiff's challenge to the ALJ's finding that the number of exemplar jobs is adequate to support the conclusion that work Plaintiff can do is sufficiently available in the national economy.

### C. ALJ Failed to Consider Side Effects of Medication

Plaintiff argues that the ALJ erred by failing even to mention in his decision the side effects that Plaintiff claims (in subjective testimony and in the function report) are caused by his medications – forgetfulness and stomach issues. The argument fails because the premise is inaccurate: far from failing to mention these statements, the ALJ expressly mentioned and considered Plaintiff's subjective claim that medication "messes with his memory and causes stomach issues." Tr. 23. There is also no error because the ALJ appropriately juxtaposed Plaintiff's subjective claims including this one with the many treating records noting, for example, no acute distress, Plaintiff's healthy appearance and his denial of nausea and vomiting, Tr. 24-25. And, as to the symptom of forgetfulness, the argument also fails because Plaintiff's memory limits were considered by the consulting and non-examining mental health experts on whom the ALJ relied for the RFC. The lack of error is cinched by the ALJ's reliance on the form filled in by Plaintiff's treating provider, P.A. Maina – it asked her to opine on medication side effects and she did not list any. Tr. 723. And if the ALJ had failed to mention this testimony (which he did not), the failure to explicitly address such a medication side effect mentioned only in unsupported subjective testimony during the hearing and in the function report does not require remand. Thomas L. v. O'Malley, C.A. No. 24-00195-WES, 2024 WL 4948805, at *8 (D.R.I. Dec. 3, 2024) (unsupported subjective allegations at ALJ hearing and in one of function reports did not require ALJ to explicitly address alleged medication side effects in the

16

decision), <u>adopted by text order</u> (D.R.I. Jan. 27, 2025).  For each of these reasons, this argument is rejected.

> **D.      ALJ's Approach to Plaintiff's Ability to Complete Normal Workday/Workweek**

Plaintiff argues that the ALJ erred in failing to marshal substantial evidence in support of his finding that Plaintiff can sustain work at a normal/routine pace without excessive absence or off-task time.  The argument fails because the ALJ <u>did</u> rely on substantial evidence for this finding – the persuasive findings expressed in the narrative explanation of all three psychiatric non-examining experts that, while moderately limited in the ability to persist and sustain pace, Plaintiff can perform work involving simple tasks/simple instruction/simple changes in a low stimulus environment for two-hour periods over the course of an eight-hour workday/forty hour workweek at a standard work pace.  <u>Marissa L. v. Bisignano</u>, C.A. No. 24-323MRD, 2025 WL 2463218, at *6 (D.R.I. Aug. 26, 2025) (no error in RFC without allowance for off-task time or absenteeism based on narrative explanations of non-examining experts that claimant retained RFC to carry out simple tasks and simple instructions based on stable work assignments over the course of a normal 8/5/40 work routine).  Further, Plaintiff does not direct the Court to any expert or treating source who specifically opined to excessive absenteeism or off-task time impacting the ability to work at any job.  Thus, for example, presented with a form that had check-boxes for off-task time and absenteeism, P.A. Maina did not check any of them.  <u>Id.</u> Based on the foregoing, this argument is rejected.

## V.      <u>Conclusion</u>

Having reviewed the entirety of this record, the Court finds that remand is not appropriate and affirms the ALJ's well supported and legally correct decision.  Based on the foregoing, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 11) is DENIED and

Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) is

GRANTED.  The Clerk is directed to enter judgment in favor of Defendant.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 18, 2026